El Juez Asociado Señor Estrella Martínez
emitió la opinión del Tribunal.
El recurso ante nuestra consideración nos otorga la oportunidad de delimitar el alcance del privilegio abogado- *514 cliente en el contexto corporativo. Nos toca resolver si una conversación sostenida entre un empleado de una corpora-ción y los abogados de ésta, de cara a una potencial de-manda contra la corporación por parte de terceros, consti-tuye materia privilegiada en un pleito independiente instado por el empleado contra la corporación al amparo de múltiples leyes laborales.
Precisada la controversia pendiente ante esta Curia, pa-semos a esbozar el marco fáctico pertinente.
I
El 18 de junio de 2010, el Sr. José Pagán Cartagena (señor Pagán Cartagena o recurrido) presentó una de-manda contra su antiguo patrono, la corporación First Hospital Panamericano, Inc. (peticionaria, First Hospital o corporación), una entidad dedicada a prestar servicios hos-pitalarios a pacientes de salud mental.(1) El señor Pagán Cartagena instó la referida acción legal tras ser despedido el 23 de junio de 2009, luego de ocupar el puesto de técnico de salud mental desde el 15 de febrero de 1989.
El recurrido alegó que su despido se debió a las expre-siones que hizo en una reunión sostenida con determina-dos empleados y los abogados de la administración de la corporación, quienes interesaban discutir los aconteci-mientos ocurridos entre el 25 y el 26 de abril de 2009, fecha en la cual una paciente de salud mental se suicidó en una de las instituciones psiquiátricas de First Hospital. Los abogados procuraban conversar con el recurrido porque *515 éste trabajó durante el turno en el cual ocurrió el lamentable suceso y porque sus funciones esa noche, presunta-mente, consistían en hacer rondas de vigilancia en las áreas de cuidado intensivo, lugar en el cual se encontraba internada la paciente indicada.
First Hospital y sus representantes legales buscaban obtener esta información con anticipación a una potencial demanda instada por los familiares de la paciente fallecida en contra de la corporación. El señor Pagán Cartagena alega que en esta reunión le comunicó a los abogados de First Hospital que si lo llamaban a testificar ante un Tribunal, de cara a la posible causa de acción mencionada, testificaría sobre la supuesta negligencia de la peticionaria en instaurar medidas de seguridad que hubiesen preve-nido el suicidio.
El 30 de julio de 2010, la corporación contestó la de-manda del recurrido. En su contestación, First Hospital argumentó que el contenido de la reunión celebrada entre sus abogados, su personal administrativo y el señor Pagán Cartagena era materia privilegiada y confidencial, cobi-jada por el privilegio abogado-cliente, codificado en la Re-gla 503 de Evidencia de Puerto Rico, 32 LPRAAp. VI.
En respuesta, el 13 de octubre de 2010, el recurrido pre-sentó una moción en la cual objetó la invocación del privi-legio abogado-cliente que realizó First Hospital al contes-tar la demanda. En lo pertinente, el señor Pagán Cartagena alegó que el referido privilegio probatorio no aplicaba al contenido de la reunión antes indicada, ya que el recurrido no era un “cliente”, según este término es em-pleado por la Regla 503 de Evidencia, supra. Concreta-mente, el recurrido citó la decisión del Tribunal Supremo federal en Upjohn Co. v. United States, 449 US 383 (1981), para argüir que, en el contexto corporativo, el concepto “cliente” incluye a los empleados que representan de forma autorizada al patrono corporativo. Según el recurrido, sus expresiones en la reunión no las profirió en representación *516 de la corporación. Al contrario, alegó que sus palabras fue-ron emitidas como testigo de los hechos que condujeron al suicidio de la paciente. Además, señaló que los empleados de la administración que asistieron a la reunión eran los verdaderos representantes autorizados de First Hospital y, por ello, los “clientes” considerados en la Regla 503 de Evi-dencia, supra.
El 22 de noviembre de 2010, la corporación se opuso a la moción del señor Pagán Cartagena. En su oposición, First Hospital descansó en Upjohn Co. v. United States, supra, para argüir que las conversaciones de sus abogados con el recurrido estaban protegidas por el privilegio abogado-cliente, aunque el señor Pagán Cartagena no fuese un representante de la empresa o parte del grupo de empleados encargados de dirigir las acciones de la corporación ante el asesoramiento legal de sus abogados (Control-Group).
Luego de examinar los planteamientos de ambas partes, el 1 de diciembre de 2010, el Tribunal de Primera Instan-cia, sin fundamentar su decisión, dictaminó “no ha lugar” a la moción del recurrido que objetaba la invocación hecha por la corporación del privilegio abogado-cliente respecto a las conversaciones sostenidas entre sus abogados y el recurrido. El 5 de enero de 2011, el señor Pagán Cartagena impugnó esta decisión ante el Tribunal de Apelaciones me-diante una petición de certiorari. El 21 de enero de 2011, First Hospital presentó su oposición al recurso del recurrido.
Así las cosas, el 31 de marzo de 2011 —y notificada el 8 de abril de ese año— el foro apelativo intermedio expidió el recurso de certiorari presentado por el señor Pagán Carta-gena y emitió su dictamen. En éste, el Tribunal a quo re-vocó al foro primario y resolvió que no aplicaba el privilegio abogado-cliente. Según el Tribunal de Apelaciones, aplicar el privilegio privaría al señor Pagán Cartagena de infor-mación neurálgica para el éxito de su reclamación laboral en contra de la peticionaria y violentaría su derecho a te- *517 ner un acceso adecuado a la justicia, entre otras conse-cuencias legales.
Luego de varios trámites interlocutorios,(2) el 13 de sep-tiembre de 2011, First Hospital presentó ante nos una petición de certiorari. En ésta, la corporación impugna la Sentencia del Tribunal a quo y le imputa haber errado por permitir que el recurrido se valga de información privile-giada para instar su causa de acción laboral contra el patrono. El 9 de diciembre de 2011, esta Curia expidió el auto presentado. Al cabo de varias órdenes procesales, el 30 de abril de 2012, la parte recurrida presentó su alegato en contra de la petición expedida.
Con el beneficio de la comparecencia de ambas partes, procedemos a exponer el marco jurídico aplicable a las con-troversias pendientes ante nuestra consideración.
II
Nuestro cuerpo de normas probatorias existe con el pro-pósito principal de alcanzar “el descubrimiento de la verdad en todos los procedimientos judiciales”. Regla 102 de Evidencia, 32 LPRA Ap. VI. Véase, también, Pueblo v. Fernández Rodríguez, 183 DPR 770, 784 (2011), citando a Pueblo v. De Jesús Delgado, 155 DPR 930 (2001). Ante ello, nuestras Reglas de Evidencia “están orientadas hacia la admisión liberal de toda la evidencia pertinente” para la adecuada resolución de una controversia. R. Emmanuelli *518 Jiménez, Prontuario de derecho probatorio puertorriqueño 2010, San Juan, Ediciones Situm, 2010, pág. 247.
No obstante, en ocasiones, nuestro ordenamiento evidenciario excluye prueba pertinente “por consideraciones de política pública, para adelantar valores o intereses sociales ajenos o antagónicos a la búsqueda de la verdad [...]”. E.L. Chiesa Aponte, Tratado de derecho probatorio (Reglas de Evidencia de Puerto Rico y federales), República Dominicana, Ed. Corripio, 2009, T. I, pág. 185. Véase, también, Ortiz v. Meléndez, 164 DPR 16, 28 (2005). Los privilegios evidenciarios constituyen una de estas instancias probatorias. Ello, pues, “por su naturaleza y función, impiden el descubrimiento de ciertos actos, hechos o comunicaciones por existir intereses en conflicto que intervienen con esa búsqueda exhaustiva de la verdad”. Pueblo v. Fernández Rodríguez, supra, pág. 784. Véase, además, Pueblo v. De Jesús Delgado, supra, pág. 939.
El Prof. Ernesto L. Chiesa abunda sobre lo anterior en los términos siguientes:
Se estima que el sacrificio de evidencia con claro valor probatorio se justifica para adelantar un alto interés público. [...] Mientras más alto sea el interés público que se quiere adelantar con el privilegio, mayor será su alcance y menor las excepciones al privilegio. Mientras menor sea el interés público que se quiere adelantar, de menor alcance será el privilegio y más las excepciones [...] E.L. Chiesa, Reglas de Evidencia de Puerto Rico 2009, San Juan, Pubs. JTS, 2009, pág. 149. Véase, también, Pueblo v. Fernández Rodríguez, supra, pág. 784.
Como los privilegios están reñidos con la búsqueda de la verdad, la Regla 518 de Evidencia exige que “[l]as reglas de privilegios se interpret [e]n restrictivamente en relación con cualquier determinación sobre la existencia de un privilegio [...]”.(3) 32 LPRA Ap. VI. Véanse, también: Pueblo v. De Jesús Delgado, supra, pág. 939; Pue *519 blo en interés menor L.R.R., 125 DPR 78, 88 (1989); Lugo Ortiz v. Ferrer, 85 DPR 862, 871 (1962); Informe de las Reglas de Derecho Probatorio, Tribunal Supremo de Puerto Rico, Comité Asesor Permanente de Reglas de Evidencia del Secretariado de la Conferencia Judicial y Notarial, 12 de marzo de 2007, pág. 308. Esta norma procura “evitar la extensión indebida de los privilegios”, en aras de no atollar la consecución de la verdad en los procesos judiciales. Rodríguez v. Scotiabank de P.R., 113 DPR 210, 214 (1982). Ante esta exigencia de interpretación legal, los tribunales están obligados a rechazar cualquier invocación de un privilegio evidenciario cuando surjan dudas respecto a la presencia de los requisitos estatutarios exigidos para su existencia. Chiesa Aponte, Reglas de Evidencia de Puerto Rico 2009, op. cit, pág. 177.
En iguales términos, es imprescindible que el peso de demostrar que aplica un privilegio reside en quien sostiene su existencia, no en la parte contraria. 1 McCormick on Evidence Sec. 73.1, pág. 342 (2006). Los privilegios no son automáticos; el poseedor del privilegio tiene el deber de invocarlo de manera fundamentada en el primer momento en que se intente divulgar la comunicación. 3 Weinstein’s Federal Evidence Sec. 503.20[2], págs. 503-62.1-503-63 (2006). Quien invoca la existencia de un privilegio tiene el deber de demostrarle al juzgador, con prontitud, todas las razones que convierten la comunicación en privilegiada. McCormick on Evidence, supra, Secs. 52 y 73.1, págs. 253 y 342. En ese quehacer, el poseedor del privilegio tiene que establecer la existencia de los elementos del privilegio que invoca mediante preponderancia de la prueba.(4) 1-6B The New Wigmore: Evidenciary Privileges, Sec. 6.3.1, pág. 591, y esc. 3 (2da ed. 2009).
*520 Teniendo presente los principios generales aplicables a todo privilegio evidenciario, examinemos en detalle los contornos jurídicos del privilegio abogado-cliente.
III
A. El privilegio abogado-cliente es “el más antiguo de los privilegios que emanan del derecho común” (Pueblo v. Fernández Rodríguez, supra, pág. 786) y “el privilegio no constitucional más sólido de nuestro ordenamiento” legal (Emmanuelli Jiménez, op. cit., pág. 265). La justificación para excluir evidencia pertinente debido a este privilegio ha variado con el pasar de los años. En sus orígenes, el privilegio abogado-cliente encontró su justificación en la protección del honor de un abogado, quien juraba a su cliente confidencialidad y lealtad. Véase The New Wigmore: Evidenciary Privileges, supra, Sec. 2.2, pág. 128. De tal manera, el privilegio existía para facultar al abogado con las herramientas necesarias para hacer valer ese código de honor convenido con su cliente y evitar divulgar sus confidencias. Íd., Sec. 2.3, pág. 136. Es por ello que el tenedor del privilegio era el abogado y era quien único podía invocarlo.(5) Íd.
La razón de ser del privilegio bajo examen está reves-tida de un carácter utilitarista y procura estimular una conducta social deseada: que el cliente, confiando en que sus comunicaciones gozarán de cierto grado de confidencialidad, consulte a un abogado para recibir asistencia legal y con ese propósito le divulgue toda la información necesaria. Véanse: 2 Graham, Handbook of Federal Evidence Sec. 503:1, pág. 57 (2006); The New Wigmore: Evi- *521 denciary Privileges, supra, Sec. 2.4, pág. 139; Upjohn Co. v. United States, supra, pág. 389 (“[The attorney-client privilege’s] purpose is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice”); Fisher v. United States, 425 US 391, 403 (1976) (“As a practical matter, if the client knows that damaging information could more readily be obtained from the attorney following disclosure than from himself in the absence of disclosure, the client would be reluctant to confide in his lawyer and it would be difficult to obtain fully informed legal advice”).
Específicamente, el privilegio abogado-cliente se justi-fica según tres consideraciones básicas de política pública. Weinstein’s Federal Evidence, supra, Sec. 503.03[1]; McCormick on Evidence, supra, Sec. 87, pág. 387. En primer lugar, se presume que “el derecho es complejo y para que los miembros de la sociedad puedan cumplir con él en el manejo de sus asuntos y en la disposición de sus controver-sias, requieren la asistencia de abogados expertos”. (Tra-ducción nuestra). McCormick on Evidence, supra. En se-gundo plano, “los abogados no pueden descargar esta función si no conocen detalladamente los hechos relaciona-dos con su cliente”. (Traducción nuestra). íd. Por último, “no se puede pretender que el cliente sitúe al abogado en pleno conocimiento de los hechos si no tiene la garantía de que al abogado no lo forzarán, por encima de la objeción del cliente, a revelar las confidencias en el tribunal”. (Traduc-ción nuestra). Id.
De acuerdo con estas consideraciones generales, pase-mos a examinar la fuente del privilegio abogado-cliente y los elementos esenciales que configuran un caso prima fa-cie para su adecuada invocación.
B. Los privilegios evidenciarios encuentran su génesis en la Constitución, la ley o en las Reglas de Evidencia. Pueblo v. Fernández Rodríguez, supra, pág. 783. *522 En el caso particular del privilegio abogado-cliente, éste nace de la Regla 503 de Evidencia, supra. De tal manera, la Regla 503(b) codifica el privilegio evidenciario indicado al proveer lo siguiente: “[E]l o la cliente —sea o no parte en el pleito o acción— tiene el privilegio de rehusar revelar, y de impedir que otra persona revele, una comunicación con-fidencial entre ella y su abogada o abogado”. 32 LPRA Ap. VI.
Según lo explica el profesor Rolando Emmanuelli Jiménez, el privilegio abogado-cliente “pretende proteger la confidencialidad de las comunicaciones entre los abogados, abogadas y sus clientes que estén relacionadas a alguna gestión profesional y basadas en la confianza de que no serán divulgadas más allá de lo necesario para llevar a cabo sus fines”. R. Emmanuelli Jiménez, Compendio de derecho probatorio puertorriqueño 2012, San Juan, Ediciones Situm, 2012, pág. 102. Cónsono con esta explicación, el profesor Wigmore resumió los elementos esenciales del privilegio abogado-cliente de la manera siguiente: (1) cuando se procure un consejo legal de cualquier naturaleza; (2) de parte de un abogado, actuando en su capacidad como tal; (3) las comunicaciones hechas relacionadas a ese propósito; (4) en confidencia; (5) por un cliente; (6) estarán protegidas permanentemente a sus instancias; (7) de ser divulgadas por él o su abogado; (8) excepto cuando haya renunciado a tal protección. 8 Wigmore on Evidence Sec. 2292, pág. 554 (1961), según fue citado en E. Selan Epstein y M.M. Martin, The Attorney-Client Privilege and the Work-Product Doctrine, American Bar Association, Litigation Section, 1989, págs. 13-14. Véase, también, 2 Federal Rules of Evidence Manual Sec. 501.02[5][b] (2011).
Los tratadistas, al descansar en la definición del profe-sor Wigmore, han concluido que no importa cómo se defina el privilegio abogado-cliente, su contenido se reduce a pro-teger aquella comunicación confidencial que haga un cliente o su representante autorizado a un abogado para *523 obtener asistencia legal. Véanse: Selan Epstein y Martin, op. cit., pág. 14; Weinstein’s Federal Evidence, supra, Sec. 503.10. Estos son los elementos esenciales que el poseedor del privilegio abogado-cliente —privilegio de naturaleza absoluta— debe probar por preponderancia de la prueba para establecer un caso “prima facie” respecto a la aplica-bilidad del privilegio abogado-cliente. The New Wigmore: Evidentiary Privileges, supra, Sec. 6.3, pág. 588. Si así pro-cede, prosperará en su reclamo de que determinada comu-nicación no sea divulgada y admitida como evidencia en un procedimiento judicial. Id.
Una vez establecido lo anterior, la aplicabilidad del pri-vilegio sólo podrá ser derrotada si se cumple con una de las condiciones siguientes: (1) que el poseedor del privilegio re-nunció al mismo, o (2) que aplique alguna de las excepcio-nes que limitan el alcance de un privilegio probatorio. The New Wigmore: Evidentiary Privileges, supra. Por el contra-rio, si los elementos de un caso prima facie no son estable-cidos, entonces no cabe hablar sobre la renuncia de un pri-vilegio o si se le puede aplicar una excepción.
Nuestras Reglas de Evidencia concuerdan con este acercamiento. Es por ello que la Regla 503(a) provee defi-niciones claras para abogado, cliente, representante autori-zado y comunicación confidencial, porque constituyen el contenido mínimo de un caso prima facie para para invocar el privilegio abogado-cliente. Además, nuestro ordena-miento legal reconoce la posibilidad de que una parte re-nuncie de forma tácita o explícita a un privilegio eviden-ciario (Regla 517 de Evidencia, 32 LPRAAp. VI), o que el privilegio no aplique por una de las excepciones contenidas en la Regla 503(c) de Evidencia, 32 LPRAAp. VI.
Examinada la fuente del privilegio abogado-cliente y los elementos necesarios que configuran un caso prima facie para invocar exitosamente el privilegio, analicemos las de-finiciones pertinentes al caso de marras provistas en la Regla 503(c) para los conceptos cliente, representante auto- *524 rizado y comunicación confidencial. Ello, dentro del ámbito corporativo, por ser ese el contexto en el cual se desarro-llan los hechos ante nuestra consideración.(6)
IV
A. En primer lugar, la Regla 503(a)(2) define cliente como aquella “[pjersona natural o jurídica que, directamente o a través de representante autorizado, consulta a una abogada o a un abogado con el propósito de contratarle o de obtener servicios legales o consejo en su capacidad profesional”. (Énfasis suplido). 32 LPRAAp. VI. A su vez, establece que representante autorizado significará aquella “[p]ersona facultada para obtener servicios legales o actuar a base de consejo legal ofrecido, en representación de la que es cliente. Incluye a una persona que, con el propósito de que se brinde representación legal a quien es cliente, hace o recibe una comunicación confidencial mientras actúa dentro del alcance de su empleo con el o la cliente”. (Énfasis suplido). Regla 503(a)(3), 32 LPRA Ap. VI.
Según se deduce de las definiciones señaladas, un *525 cliente puede ser una persona natural o una persona jurídica. A su vez, el cliente puede actuar por sí mismo, o a través de un representante autorizado. Ahora bien, cuando el alegado poseedor del privilegio lo constituye una persona jurídica, como es una corporación, existen considera-ciones adicionales que dificultan precisar quién es el repre-sentante autorizado del cliente corporativo para determinar si aplica o no el privilegio abogado-cliente.
Estas dificultades surgen de la naturaleza particular de una entidad corporativa, la cual opera de forma distinta a un individuo. Weinstein’s Federal Evidence, supra, Sec. 503.22[1]. Contrario a una persona natural, quien constituye una sola entidad en comunicación directa o representativa con su abogado, la persona jurídica debe descansar en sus oficiales y empleados para comunicar a su representante legal aquellos elementos necesarios para una asesoría jurídica competente. Véanse: Weinstein’s Federal Evidence, supra, Sec. 503.22[1] (“While an individual client is generally the sole source of disclosure to an attorney, ‘a corporate client may employ many spokesmen —from upper management to blue collar employees— in order to communicate relevant information to counsel’ ”); McCormick on Evidence, supra, Sec. 87.1, pág. 392; J.E. Sexton, A Post-Upjohn Consideration of the Corporate Attorney-Client Privilege, 57 N.Y.U. L. Rev. 443, 449 (1982).
El Tribunal Supremo federal ha explicado esta diferen-cia en los términos siguientes:
Admittedly complications in the application of the privilege arise when the client is a corporation, which in theory is an artificial creature of the law, and not an individual [...]
In the case of the individual client the provider of information and the person who acts on the lawyer’s advice are one and the same. In the corporate context, however, it will frequently be [the company’s employees who] will possess the information needed by the corporation’s lawyers. Upjohn Co. v. United States, supra, págs. 389-390 y 391.
*526 Ante esta particularidad, los tribunales han enfrentado la difícil tarea de precisar qué tipo de empleado o agente está legitimado para ofrecer comunicaciones en represen-tación de la entidad jurídica, las cuales ameriten la protec-ción del privilegio bajo examen. Véanse: Federal Rules of Evidence Manual supra, Sec. 501.02[5][g]; Selan Epstein y Martin, op. cit, pág. 25. Previo a que el Tribunal Supremo federal, en Upjohn Co. v. United States, supra, atendiera la interrogante señalada, existían dos teorías conflictivas que dividían el criterio de los distintos tribunales federales y estatales respecto a qué tipo de empleado podía constituir un representante autorizado de la corporación, cuyas co-municaciones fuesen acreedoras de las protecciones garan-tizadas por el privilegio abogado-cliente.
Por un lado, una mayoría de los tribunales descansaban en la prueba del grupo-control (Control-Group Test). Esta prueba limita el alcance del privilegio abogado-cliente en el contexto corporativo a las comunicaciones entre los aboga-dos de una corporación y aquellos empleados u oficiales de ésta que estén en una posición que les confiera control sobre, o la facultad para participar substancialmente en, la decisión o el asunto para el cual se consulta al abogado de la corporación. City of Philadelphia v. Westinghouse Electric Corp., 210 F.Supp. 483, 485 (E.D. Pa. 1962). Véanse: Handbook of Federal Evidence supra, Sec. 503:3, págs. 102-103; McCormick on Evidence, supra, Sec. 87.1, pág. 392; Weinstein's Federal Evidence, supra, Sec. 503.22[2][b].
Así, cuando el empleado no pertenece al grupo de perso-nas encomendadas con la tarea de tomar acción —o parti-cipar en una decisión— a base del consejo legal provisto por el abogado de la corporación, entonces la comunicación confidencial sostenida entre el abogado y el empleado de la corporación, sobre el asunto para el cual esta necesita ase-soría legal, no se considera privilegiada, ya que se entiende que el empleado no representa o personifica a la corpora-ción.
*527 Por otra parte, otros tribunales descartaron la prueba del grupo-control, prefiriendo en su lugar la prueba de la materia (Subject Matter Test). De acuerdo con este examen se reconoce que las comunicaciones de un empleado cons-tituyen las expresiones de la corporación y, por ende, están sujetas al privilegio abogado-cliente, si: (1) el empleado, aunque no sea un miembro del grupo-control de la corpo-ración, hace una comunicación al abogado de la entidad por instrucciones de sus superiores, y (2) la materia de esa comunicación está relacionada con las responsabilidades y tareas asignadas al empleado. Harper & Row Publishers, Inc. v. Decker, 423 F.2d 487, 491-492 (7mo Cir. 1970); Weinstein’s Federal Evidence, supra, Sec. 503.22[2] [c]; Selan Epstein y Martin, op. cit., pág. 26 (“The other test focused on the ‘subject matter’ of the communication, asking whether the communication was for purpose of seeking and rendering legal advice to the corporation, whether the communication was made at the instance of the employee’s superior, and whether the subject matter of the communication was within the scope of the employee’s duties. If those indicia were present, courts using the subject matter test tended to recognize the privilege, regardless of the corporate rank of the employee making the communication”).
La decisión del Tribunal Supremo federal en Upjohn Co. v. United States, supra, atendió explícitamente la diver-gencia de estándares antes explicada. En primer lugar, descartó la prueba del grupo-control como una alternativa viable al momento de interpretar qué empleado constituye un representante autorizado para delimitar el alcance del privilegio abogado-cliente en el contexto corporativo. íd., págs. 390-392. Sostuvo su rechazo de la referida prueba en función de los propósitos para los cuales existe el privilegio abogado-cliente.
Específicamente, el Tribunal Supremo de EE. UU. con-sideró que limitar el privilegio abogado-cliente a aquellos miembros de la alta gerencia de una entidad corporativa *528 que estuviesen a cargo de tomar decisiones para asuntos por los cuales se consultó al abogado corporativo, frustra los propósitos perseguidos por este privilegio envidencia-rio, a saber: (1) que el abogado pueda ofrecer un consejo legal informado y competente porque los empleados que poseen la información la divulgan de forma cabal por con-fiar que sus comunicaciones serán privilegiadas, y (2) que el abogado procure que su cliente corporativo, al estar más informado del estado de derecho pertinente, cumpla con las leyes. Upjohn Co. v. United States, supra, págs. 390-393.
En el caso particular del primer propósito pretendido por el privilegio abogado-cliente —fomentar la comunica-ción plena y sincera entre el abogado y el cliente— el Tribunal Supremo federal indicó que el examen del grupo-control lo coarta, ya que: (1) desalienta que los empleados de mediano y bajo rango de la corporación informen al abo-gado de ésta, aquellos hechos necesarios y pertinentes para formular un consejo legal informado y razonable, por te-mor a que sus comunicaciones no sean consideradas como materia privilegiada; (2) ignora la realidad de que son los empleados de mediano o bajo rango, y no siempre los ofi-ciales y agentes encargados de dirigir las acciones de la empresa, quienes poseen la información que necesita el abogado corporativo para una adecuada asesoría legal;(7) (3) coloca al abogado en una disyuntiva peligrosa, pues si entrevista a los empleados que no poseen la más alta au-toridad, sus comunicaciones no serán privilegiadas, mas si *529 se limita a sólo entrevistar a los oficiales encargados de dirigir la empresa, encontrará que éstos no poseen la infor-mación necesaria para determinar cómo ocurrió el asunto para el cual la entidad jurídica procura asesoría legal, y (4) prescinde considerar que son los empleados de mediano y bajo rango quienes realmente necesitan el consejo legal adecuado por ser ellos quienes implementan día a día la política corporativa. Upjohn Co. v. United States, supra, págs. 390-392.
Respecto al segundo propósito perseguido por el privile-gio abogado-cliente —que el cliente corporativo cumpla con el Derecho — , el Tribunal Supremo federal indicó que la prueba del grupo-control lo troncha por no brindar certeza en torno a qué tipo de comunicaciones serán privilegiadas. Ante ello, el examen rechazado limita la voluntariedad de un empleado corporativo para consultar a su abogado refe-rente a cómo cumplir con el complejo ordenamiento corporativo. Upjohn Co. v. United States, supra, pág. 393.
Habiendo concluido que la prueba del grupo-control no es útil para determinar qué tipo de empleado es un repre-sentante autorizado de la corporación para fines del privi-legio abogado-cliente, el máximo foro federal fue renuente a adoptar un conjunto de normas que gobierne el alcance del privilegio abogado-cliente en el marco corporativo. Ello, de acuerdo con la Regla de Evidencia federal Núm. 501, la cual establece que el reconocimiento de un privilegio pro-batorio debe quedar sujeto a un acercamiento caso a caso, consecuente con los principios del derecho común, según interpretados por la razón y la experiencia. Upjohn Co. v. United States, supra, págs. 396-397.
A pesar de que el Tribunal federal descartó adoptar un estándar para casos como el de marras, éste sí sugirió un análisis semejante en su naturaleza al Subject Matter Test. Así, concluyó que en el caso que tenía ante su consideración sí aplicaba el privilegio abogado-cliente, ya que: (1) los em-pleados de la corporación ofrecieron las comunicaciones *530 concernidas a su abogado con el propósito expreso de ase-gurar asesoría legal para la corporación; (2) las comunica-ciones estaban relacionadas con las funciones y tareas cor-porativas específicas de los empleados que manifestaron la comunicación en disputa, y éstos eran conscientes de que el abogado los consultó para que la corporación pudiese ser asesorada, y (3) la corporación trató las comunicaciones como algo confidencial por instrucciones de los gerentes de la empresa.(8) Upjohn Co. v. United States, supra, págs. 394-395. Véase, también, McCormick on Evidence, supra, Sec. 87.1, pág. 393.
Con esta Opinión en mente, en el 2009 adoptamos nuestra Regla 503 de Evidencia. Al hacerlo, fuimos explícitos en codificar lo resuelto en Upjohn Co. v. United States, supra.(9) Es por ello que añadimos la definición del representante autorizado, por coincidir con el criterio del Tribunal Supremo federal en cuanto a que el privilegio abogado-cliente “se extiende a conversaciones entre el abogado o abogada y los representantes y empleados” de la corporación, “si tales comunicaciones resultan pertinentes para asesorar al cliente”. Informe de las Reglas de Derecho *531 Probatorio, supra, págs. 227-228. Véase, también, Emmanuelli Jiménez, Prontuario de derecho probatorio puertorriqueño 2010, op. cit, pág. 267.
El Prof. Ernesto L. Chiesa confirma lo anterior. Es por ello que expresa que nuestra Regla 503(a), al definir repre-sentante autorizado, adoptó “una interpretación extensiva del concepto ‘cliente’, compatible con lo resuelto en Up John Company v. United States, [supra], en relación con el alcance de ‘cliente’ cuando es una corporación”. Chiesa, Reglas de Evidencia de Puerto Rico 2009, op. cit, pág. 151. Como resultado de lo anterior, “[l]a comunicación, para que sea privilegiada, no tiene que ser entre el abogado y las altas esferas de la corporación. Es suficiente con que la comunicación sea con una persona que tiene información importante para el asesoramiento”. Id.
Según lo expresado, y resumiendo, podemos concluir que en Puerto Rico no aplica el estándar de la prueba del grupo-control (Control Group Test). Esto en función de nuestra codificación expresa de Upjohn Co. v. United States, supra, en nuestra Regla 503(a) de Evidencia, supra. Consecuentemente, el privilegio abogado-cliente no está limitado a las comunicaciones que ofrezcan los oficiales y empleados de las altas esferas de la corporación encargados de diseñar la política corporativa. Al contrario, hoy adoptamos el estándar sugerido en el caso federal nombrado, el cual se asemeja a la prueba de materia (Subject Matter Test). Así, un empleado será un representante autorizado del cliente (la corporación), siempre y cuando: (1) haya ofrecido sus comunicaciones al abogado corporativo para asegurar asesoría legal a la corporación; (2) las comunicaciones estaban relacionadas con las funciones y tareas corporativas específicas del empleado y éste era consciente de que el abogado lo consultaba para que la corporación pudiese ser asesorada legalmente, y (3) la corporación trató sus comunicaciones confidencialmente por instrucciones de los gerentes de la empresa.
*532 Al adoptar expresamente el estándar señalado, procura-mos cumplir con el texto de nuestra citada Regla 503(a), el cual define cliente como aquella persona jurídica que enta-bla una comunicación confidencial con su abogado, a través de su representante autorizado. A su vez, honramos la letra de nuestra Regla 503(a)(3), la cual define representante au-torizado, en lo pertinente, como aquella persona que, “con el propósito de que se brinde representación legal a quien es cliente [(la corporación)], hace o recibe una comunicación confidencial mientras actúa dentro del alcance de su em-pleo con el o la cliente”. (Enfasis suplido).
Según se deduce de estas definiciones, encontramos to-dos los elementos del estándar que hoy adoptamos. En primer lugar, el representante autorizado emite su comunica-ción para asegurar una asesoría legal en beneficio del cliente (la corporación). En segundo plano, el contenido de la comunicación está dentro del alcance de las funciones y responsabilidades del empleo del representante autorizado con la corporación, y son emitidas para que esta última sea asesorada. Tercero, la comunicación ha sido tratada —y continúa siendo tratada— como confidencial por la em-presa, porque así lo han ordenado los superiores corporati-vos del empleado.
Más aún, el estándar aquí acogido —distinto a la prueba del grupo-control— cumple con los principios de po-lítica pública, perseguidos por el privilegio abogado-cliente, según los hemos detallado. Ello, pues, procura proteger aquellas comunicaciones sostenidas entre el abogado y los empleados de una empresa, no en función de su rango cor-porativo, sino por la relación existente entre el contenido de la comunicación confidencial, las responsabilidades cor-porativas del empleado comunicador y el interés de sus superiores de que la información que tenga el empleado llegue a los oídos del abogado, para garantizar una aseso-ría legal cabal en beneficio de la empresa. A su vez, honra-mos el historial de nuestras Reglas de Evidencia y velamos por la vindicación de su letra clara.
*533 Teniendo claro qué implican los conceptos cliente y re-presentante autorizado en el contexto corporativo, expli-quemos el contenido mínimo del requisito de que la comu-nicación ofrecida sea confidencial.
B. Según adelantado, para que aplique el privilegio abogado-cliente respecto a determinada comunicación, quien invoca el privilegio debe probar, entre otros factores, que la comunicación fue emitida con carácter confidencial. Ortiz García v. Meléndez Lugo, supra, pág. 28 (“la exclusión de prueba basada en los privilegios responde a la ‘confidencialidad [...] para proteger al titular del derecho’ ”). Nuestra Regla 503(a)(4) de Evidencia define comunicación confidencial como “[a]quélla habida entre una abogada o un abogado y su cliente en relación con alguna gestión profesional, basada en la confianza de que no será divulgada a terceras personas, salvo a aquéllas que sea necesario para llevar a efecto los propósitos de la comunicación”. (Énfasis suplido). 32 LPRA Ap. VI.
De esta manera, esta definición nos ilustra ciertos elementos indispensables para que una comunicación sea confidencial en su naturaleza, a saber: (1) que ocurra una comunicación entre el abogado y el cliente; (2) que el contenido se relacione con una gestión profesional (entiéndase, que constituya un asesoramiento sobre materia legal); (3) que la comunicación se divulgue bajo la creencia o confianza razonable de que no se divulgará a terceras personas; (4) que se divulgará a aquellas personas que necesitan la información para el más cabal asesoramiento legal. Véanse: Chiesa, Reglas de Evidencia de Puerto Rico 2009, op. cit., pág. 151; Emmanuelli Jiménez, Prontuario de derecho probatorio puertorriqueño 2010, op. cit., pág. 267. Enfoquemos nuestra mirada sobre las implicaciones jurídicas de estos últimos dos requisitos.
Como norma general, “[l]a presencia de terceras perso-nas que nada tienen que ver con el asesoramiento legal es indicio de que no hay expectativa de confidencialidad”. *534 Chiesa, Reglas de Evidencia de Puerto Rico 2009, op. cit., pág. 151. Esto, pues, el elemento esencial para la confiden-cialidad —esto es, la intención de que la comunicación no sea divulgada a terceros fuera de la relación de asesora-miento legal— está ausente. Handbook of Federal Evidence, supra, Sec. 503:4, págs. 124 — 126 (“Matters intended to be disclosed [...] are not within the privilege. [I\ntent to disclose is of critical concern [...]”). (Enfasis suplido).
El professor Weinstein abunda sobre lo anterior en los términos siguientes:
The lawyer-client privilege applies only when the communication is confidential. A communication is confidential when the circumstances indicate that it was not intended to be disclosed to third persons other than (1) those to whom disclosure is in furtherance of the rendition of legal services to the client, or (2) those reasonably necessary for the transmission of the communication.
Confidentiality is defined by the client’s intent. If the client intended the matter to be made public, the requisite confidentiality is lacking, and the privilege does not apply. (Enfasis suplido y escolios omitidos.). Weinstein’s Federal Evidence, supra, Sec. 503.15[1]-[2],
Al examinar el texto de la Regla 503(a)(4) encontramos que “no” se considerarán como “terceros” a los sujetos siguientes: (1) el abogado, (2) el cliente, y (3) aquellas personas que necesitan la información para el más cabal asesoramiento legal. Este tercer grupo de personas es catalogado por la doctrina como los agentes del abogado o del cliente. Véanse: Weinstein’s Federal Evidence, supra, Sec. 503.15[3]; Federal Rules of Evidence Manual, supra, Sec. 501.02E5] [e][i].
En el caso particular del abogado, no se considerarán como terceros aquellos empleados del abogado que son esenciales para el ofrecimiento de un asesoramiento legal cabal al cliente. A modo de ejemplo, la presencia de secre-tarias, intérpretes, abogados asociados, paralegales, y otros agentes imprescindibles para adelantar la gestión de asesoramiento legal perseguida por el cliente, no destruye *535 el privilegio abogado-cliente. Weinstein’s Federal Evidence, supra, Sec. 503.15[3].
En iguales términos, el cliente puede delegar en agentes para comunicarse con el abogado. Por lo tanto, aquellos empleados de una corporación que se constituyan en sus representantes autorizados, no equivalen o no son perso-nas adicionales al abogado y al cliente, cuya presencia pueda destruir el carácter privilegiado de la comunicación. Selan Epstein y Martin, op. cit, pág. 43. Ello, pues, la co-municación con estos individuos es imprescindible para lo-grar los propósitos del privilegio abogado-cliente, sépase: (1) la provisión de una asesoría legal cabal e informada, y (2) que la empresa esté lo suficientemente informada como para cumplir con las exigencias del Derecho.
Ahora bien, ¿qué ocurre cuando un agente —específica-mente un representante autorizado del cliente— quien está legitimado a tener acceso a la comunicación del cliente para adelantar los propósitos de brindarle asesoría legal, se ve obligado a utilizar la comunicación para vindicar sus derechos frente al cliente? ¿Acaso el cliente puede invocar el privilegio abogado-cliente en contra del agente, a pesar de que este último participó y conoce el contenido de la comunicación confidencial? La respuesta es no.
Como bien explicamos anteriormente, una comunicación es confidencial porque quien posee el privilegio tiene la intención de que su conversación con sus abogados, ya sea por sí o a través de sus agentes, no sea divulgada a terceros. Siempre y cuando el cliente tenga la intención y vele por que un tercero no conozca el contenido de su comunicación con su abogado, ésta continúa gozando del manto de la confidencialidad.
No obstante, ya hemos establecido que los agentes del cliente y del abogado no son terceros para determinar si una comunicación es confidencial. Por eso, estos pueden tener acceso al contenido de la comunicación sin que ésta pierda su carácter de confidencialidad. Ahora bien, si el *536 abogado o un agente intentaran divulgar el contenido de la comunicación a un tercero sin la aprobación del cliente, éste puede invocar oportunamente el privilegio abogado-cliente y detener tal divulgación.(10) Mientras el cliente tenga la intención de que la comunicación no se divulgue a terceros, nadie puede contravenir sus designios.
Sin embargo, cuando un agente —como lo constituye un representante autorizado— interesa utilizar la comunica-ción confidencial para vindicar sus derechos de cara al cliente en un caso que sólo involucre a estas partes, otro resulta ser el caso. Ante un escenario como éste, los trata-distas sostienen que es inaplicable el privilegio abogado-cliente no aplica. Lo anterior se debe a que no existe inten-ción del cliente de excluir al agente del contenido de la comunicación. McCormick on Evidence, supra, Sec. 91.1, pág. 412. En otras palabras, entre ellos no hay confidencia-lidad que proteger, pues no hay terceros ajenos al propósito por el cual se profirió la comunicación.
Los tratadistas asemejan esta circunstancia particular a los casos en los cuales dos o más personas consultan a un abogado de forma conjunta, cada cual teniendo un interés particular en algún asunto. McCormick on Evidence, supra, Sec. 91.1, pág. 412. (“where a client calls into the conference with the attorney one of the client’s agents, and matters are discussed which hear on the agent’s rights against the client, it would seem that in a subsequent controversy between client and agent, the limitation on the privilege accepted in the joint consultation cases should furnish a controlling analogy”). (Énfasis suplido). Al am-paro de esta analogía, cuando un agente del cliente (Le., un representante autorizado de una empresa) participa en una comunicación para asegurar asesoría legal para el cliente, la comunicación del agente con el abogado, aunque *537 conocida por el agente y el cliente, será confidencial en cualquier controversia que pueda surgir entre el agente o el cliente, o ambos, frente a un tercero. íd., pág. 411. Ahora bien, cuando el agente se encuentre en la necesidad de vin-dicar sus derechos frente al cliente, descansando en el con-tenido de la comunicación confidencial que los unió al ini-cio, el privilegio no aplicará. íd., pág. 411. Ninguno tiene nada que ocultarle al otro respecto a la comunicación en disputa y, por ende, no hay una intención de confidenciali-dad entre ambos. íd., pág. 412.
Encontramos apoyo a nuestra conclusión en otras deci-siones persuasivas de otras jurisdicciones sobre este mismo asunto. A manera ilustrativa, en Pagano v. Ippoliti, 245 Conn. 640 (1998), una corporación contrató a un em-pleado llamado Gary Dayton para que se encargara de un proyecto de construcción que ésta interesaba materializar. Para eso, el empleado se comunicó con los abogados de la corporación en calidad de su representante autorizado. Luego, entre Dayton y la corporación surgieron diferencias en cuanto al progreso de la construcción y el empleado fue despedido. Más adelante, otro empleado despedido, Jeffrey Pagano, demandó a la corporación por iguales fundamen-tos por los que despidieron a Dayton. En ese pleito, el Tribunal Supremo de Connecticut expresó que cuando un em-pleado, como representante de la corporación, ofrece comunicaciones al abogado que la representa y luego surge un pleito entre el empleado y la corporación, en el cual las comunicaciones son pertinentes, el privilegio abogado-cliente no aplica.(11) Íd., págs. 649-650. Sencillamente, los individuos involucrados en la comunicación no pretendían esconderse lo comunicado. No hay, pues, comunicación secreta entre ellos. íd., pág. 650. Véanse, también: Inter-Fluve v. Montana Eighteenth Judicial Dist. Court, 327 *538 Mont. 14 (2005); Gottlieb v. Wiles, 143 F.R.D. 241 (D. Colo. 1992).
Al igual que el Tribunal Supremo de Connecticut, la norma que hoy adoptamos responde al entendido preve-nido de que un representante autorizado y el cliente, en un pleito instado por aquél contra este último, no tienen nada que ocultarse o mantener en confidencia respecto a las co-municaciones que ambos ofrecieron ante un abogado con miras a asegurar asesoría legal para la corporación. Como resultado, no hay una comunicación confidencial entre ellos. Consecuentemente, no existen los elementos necesa-rios para invocar exitosamente el privilegio abogado-cliente en contra del representante autorizado.
Habiendo expuesto el marco jurídico aplicable al caso de autos, pasemos a resolver la controversia ante nuestra consideración.
V
En el caso que nos ocupa, First Hospital arguye que cuando el señor Pagán Cartagena ofreció comunicaciones al abogado de la corporación —como parte de una investi-gación interna en anticipo a un potencial litigio contra los familiares de la paciente fallecida— y luego instó una re-clamación laboral en contra de la corporación, en la cual la comunicación es pertinente, el privilegio abogado-cliente impide que el recurrido se valga de esa comunicación para establecer su causa de acción laboral. No le asiste la razón.
Según explicamos anteriormente, el privilegio abogado-cliente impide que se divulgue una comunicación sostenida entre un cliente y su abogado, siempre y cuando el que invoca el privilegio probatorio establezca, por preponde-rancia de la prueba, que: (1) un cliente —o su represen-tante autorizado — , (2) hizo una comunicación confidencial, (3) a su abogado, (4) para obtener asistencia legal. A conti-nuación examinamos si First Hospital —la persona jurí- *539 dica que invoca el privilegio— probó los elementos mencionados.
De entrada, amerita resaltar que las alegaciones ofreci-das por ambas partes en sus respectivos escritos a lo largo del tracto judicial establecen que no existe controversia respecto a que los últimos dos requisitos exigidos para la existencia del privilegio abogado-cliente —entiéndase, el requisto de que una comunicación fue vertida a un abo-gado, y el de que haya sido para obtener asistencia legal— están presentes en las conversaciones en disputa. En primer lugar, First Hospital y el señor Pagán Cartagena re-conocen que los abogados de First Hospital, en su carácter de asesores legales, se comunicaron con el recurrido. En segundo plano, ambas partes sostienen que estas conver-saciones ocurrieron para asegurar asesoría legal a favor de First Hospital, de cara a una potencial demanda que ins-tarían los familiares de una paciente fallecida en contra de la peticionaria.
Establecido lo anterior, pasemos a analizar si First Hospital cumplió con los restantes requerimientos para invo-car el privilegio abogado-cliente, a saber: (1) que el señor Pagán Cartagena es un representante autorizado de la cor-poración, y (2) que su comunicación a los abogados del cliente (First Hospital) fue manifestada confidencialmente. Atendamos estas exigencias en el orden indicado.
Como cuestión de umbral, el privilegio abogado-cliente sólo puede aplicar cuando su poseedor —el cliente— o al-guien a su favor, lo invoca oportunamente. De acuerdo con nuestra exposición del Derecho, un cliente puede ser una persona natural o jurídica. En el caso de las personas jurí-dicas, éstas deben descansar en sus representantes autori-zados —sus empleados u oficiales— para poder obtener una asesoría legal, ya que éstos poseen la información per-tinente requerida para tal encomienda. Como resultado de lo anterior, aunque exista un cliente (la corporación), sus comunicaciones estarán protegidas por el privilegio *540 abogado-cliente sólo si fueron manifestadas a través de sus representantes autorizados.
Ahora bien, no todo empleado u oficial corporativo cons-tituye un representante autorizado de la empresa, cuyas expresiones confieran al cliente corporativo un derecho a invocar oportunamente el privilegio abogado-cliente. Se-gún detallamos anteriormente, y de acuerdo con las expre-siones del Tribunal Supremo federal en Upjohn Co. v. United States, supra, las comunicaciones de un empleado u oficial en representación del cliente corporativo harán a este último acreedor de las protecciones garantizadas por el privilegio indicado, siempre y cuando se pruebe que: (1) las comunicaciones del empleado fueron ofrecidas al abo-gado corporativo con el propósito expreso de asegurar ase-soría legal para la corporación; (2) las comunicaciones es-taban relacionadas con las funciones y tareas corporativas específicas del empleado, y éste era consciente de que el abogado lo estaba consultando para que la corporación pu-diese ser asesorada legalmente, y (3) la corporación trató sus comunicaciones de forma confidencial, por instruccio-nes de los gerentes de la empresa. Apliquemos este están-dar al caso de autos.
En cuanto al primer requisito, ambas partes coinciden en que en la reunión en cuestión, el empleado comunicó información que los abogados utilizarían para asesorar le-galmente a la corporación. A su vez, las partes concuerdan en que el señor Pagán Cartagena era consciente de que el abogado lo estaba consultando para que la corporación fuese asesorada legalmente. Debido a la ausencia de con-troversia al respecto, se puede concluir que se cumplió con el primer factor.
Concerniente al segundo requisito, concluimos que nin-guna de las partes cuestiona que la comunicación que sos-tuvo el señor Pagán Cartagena con los abogados de First Hospital estuvo relacionada con los deberes y las funciones del primero. Por el contrario, el señor Pagán Cartagena *541 hace referencia en su alegato a su expediente de personal y a cómo “llevó a la atención de la gerencia y de los psiquia-tras las deficiencias y riesgos de seguridad que estaban ocurriendo”. Alegato de la parte recurrida, pág. 2. Asi-mismo, en la alegación diez de la demanda, hace un listado de cinco cosas que, a su entender, constituían deficiencias y riesgos de seguridad en su trabajo. Apéndice, pág. 25.
Por su parte, en la alegación once de la demanda se admitió que el señor Pagán Cartagena trabajó el 25 de abril de 2009 de once de la noche a siete de la mañana en el área de intensivo, donde ocurrió el accidente lamentable que da pie a la reunión posterior. Cónsono con lo anterior, las alegaciones quince a la diecinueve de la demanda van dirigidas a establecer que el incidente lamentable que ocu-rrió en el área de trabajo del señor Pagán Cartagena se debió a la negligencia exclusiva de First Hospital. Debido a la ausencia de controversia sobre este asunto, podemos de-cir que se cumplió el segundo factor.
En cuanto al tercer factor establecido en Upjohn Co. v. United States, supra, el señor Pagán Cartagena aduce que en esa reunión con los abogados también había otras per-sonas, a saber: la Directora de Recursos Humanos, Ge-rente de Calidad, entre otros. Véase Moción objetando pri-vilegio abogado-cliente, Apéndice, pág. 51. Además de esas personas, también se encontraban los otros empleados que trabajaron el turno. Véanse: Demanda, Alegaciones 20 y 21, Apéndice, pág. 27, aceptadas en lo aquí pertinente por la parte demandada en Contestación a Demanda, Apén-dice, págs. 39 y 69-70.
Sin embargo, de acuerdo con la doctrina señalada, debe-mos concluir que las personas a las que hace referencia el señor Pagán Cartagena son claramente agentes de la cor-poración, necesarios para alcanzar una asesoría legal com-petente a favor de First Hospital.
Por todo lo anterior, concluimos que el señor Pagán Car-tagena era un representante autorizado de la corporación, *542 por entender probados todos los elementos esbozados en Upjohn Co. v. United States, supra. Por último, nos corres-ponde resolver en cuanto al privilegio abogado-cliente si, a su vez, se cumple con el requisito de confidencialidad.
Según lo reseñado en nuestra discusión legal, cuando un agente interesa utilizar una comunicación confidencial para vindicar sus derechos de cara al cliente que representa, no existe confidencialidad que proteger entre el representante autorizado y el cliente corporativo. Ello, pues, el cliente corporativo no tuvo la intención de excluir a su representante autorizado del contenido de la comunicación y, por ende, ninguno tiene nada que ocultarle al otro respecto a la comunicación en disputa. Como resultado, aunque el cliente puede impedir que su representante autorizado divulgue el contenido de la comunicación a terceros ajenos a ella, no puede impedir que éste utilice su contenido al instar una causa de acción contra la corporación con el fin de vindicar sus derechos frente al cliente corporativo.
Ahora bien, consideramos que en el pleito que tenemos ante nuestra consideración, en donde un exempleado pre-tende utilizar comunicaciones presuntamente privilegia-das para fundamentar su causa de acción contra First Hospital, al amparo de múltiples leyes laborales, no cabe hablar de confidencialidad.
Conforme a lo discutido, concluimos que en el caso de marras no existe el elemento de confidencialidad, exigido por nuestro ordenamiento legal, para que un tribunal re-conozca el privilegio abogado-cliente respecto a determi-nada comunicación.
VI
Por los fundamentos antes expuestos, confirmamos al Tribunal de Apelaciones y resolvemos que en el caso de autos no aplica el privilegio abogado-cliente. Ante ello, devol- *543 vemos el caso al Tribunal de Primera Instancia para la continuación de los procedimientos de acuerdo con lo aquí resuelto.

Se dictará Sentencia de conformidad.

La Jueza Asociada Señora Pabón Charneco disintió con una opinión escrita. El Juez Asociado Señor Feliberti Cin-tron disintió sin opinión escrita.

 En su demanda, el señor Pagán Cartagena instó causas de acción al amparo de las leyes laborales siguientes: la Ley Núm. 115-1991, según enmendada, 29 LPRA sec. 194 et seq.; la Ley Núm. 80 de 30 de mayo de 1976, según enmendada, conocida como Ley de Despido Injustificado, 29 LPRA sec. 185a et seq.; la Ley Núm. 45 de 18 de abril de 1935, según enmendada, conocida como Ley del Sistema de Compensaciones por Accidentes del Trabajo, 11 LPRA sec. 1 et seq., y el Art. 1802 del Código Civil de Puerto Rico, 31 LPRA sec. 5141.

 El 25 de abril de 2011, First Hospital presentó una moción de reconsidera-ción ante el Tribunal de Apelaciones. El 13 de julio de 2011, el foro apelativo inter-medio declaró “no ha lugar” la moción de reconsideración indicada. Esta decisión fue notificada a las partes y su notificación archivada en autos el 21 de julio de 2011. El término para acudir ante nos, mediante recurso de certiorari, vencía el lunes 22 de agosto de 2011. No obstante, ese día este Tribunal estuvo cerrado por el paso de un fenómeno atmosférico. Ante ello, First Hospital nos presentó su recurso el 23 de agosto de 2011. El 6 de septiembre de ese año denegamos una moción de First Hospital en la que solicitó que su recurso de 23 de agosto fuese aceptado con páginas en exceso del límite dispuesto por nuestro ordenamiento. Ante ello, le concedimos un término de cinco días para que volviese a presentar su recurso de certiorari en con-formidad con el límite de páginas impuesto por nuestro reglamento. First Hospital cumplió con el término impuesto.

 La única excepción a esta norma de hermenéutica reside en aquellos privilegios de rango constitucional. Regla 518 de Evidencia, 32 LPRA Ap. VI.

 Según lo hemos expresado en el pasado, preponderancia de la prueba equi-vale a que se establezcan “como hechos probados aquellos que con mayores probabilidades ocurrieron”. Zambrana v. Hospital Santo Asilo de Damas, 109 DPR 517, 521 (1980).

 Hoy, el poseedor del privilegio abogado-cliente es el cliente. E.L. Chiesa, Reglas de Evidencia de Puerto Rico 2009: Análisis por el Prof. Ernesto L. Chiesa, San Juan, Pubs. JTS, 2009, págs. 151 y 177. Véase, también, Pueblo v. Fernández Rodríguez, 183 DPR 770, 786-787 (2011).

 Como cuestión de umbral, es preciso tener presente que el Tribunal Supremo federal ha establecido explícitamente que el privilegio abogado-cliente aplica en el contexto corporativo. Upjohn Co. v. United States, 449 US 383, 390 (1981), citando a United States v. Louisville & Nashville R. Co., 236 US 318, 336 (1915). Véanse, también: 1-6B The New Wigmore: Evidentiary Privileges Sec. 6.9.1, pág. 865 (2da ed. 2009) (“Modernly, there is virtual unanimity that the privilege applies to corporate entities”); 1 McCormick on Evidence Sec. 87.1, pág. 392 (2006); E. Selan Epstein y M.M. Martin, The Attorney-Client Privilege and the Work-Product Doctrine, ABA, Litigation Section, 1989, pág. 25 (“There is no longer any question that the attorney client-privilege may be asserted by a corporation or other organization; it is not restricted to individuals”); 3 Weinstein’s Federal Evidence Sec. 503.22[1] (1998) (“there is overall agreement that corporations as clients are entitled to the benefits of the lawyer-client privilege”). Nuestra Regla 503 de Evidencia es cónsona con esta pers-pectiva y, según lo expresa el informe del Comité Asesor que trabajó en su adopción, su contenido codifica la decisión del Tribunal Supremo federal en Upjohn v. United States, 449 US 383 (1981), en múltiples aspectos. Informe de las Reglas de Derecho Probatorio, Tribunal Supremo de Puerto Rico, Comité Asesor Permanente de Reglas de Evidencia del Secretariado de la Conferencia Judicial y Notarial, 12 de marzo de 2007, pág. 227. De tal manera, es propio concluir que en Puerto Rico las corporacio-nes tienen derecho a invocar oportunamente el privilegio abogado-cliente.

 El Tribunal Supremo federal ha planteado este aspecto en los términos si-guientes:
“In the case of the individual client the provider of the information and the person who acts on the lawyer’s advice are one and the same. In the corporate context, however, it will frequently be employees beyond the control group as defined by the court below —‘officers and agents [...] responsible for directing [the company’s] actions in response to legal advice’— who will possess the information needed by the corporation’s lawyers. Middle-level —-and indeed lower-level— employees can, by actions within the scope of their employment, embroil the corporation in serious legal difficulties, and it is only natural that these employees would have the relevant information needed by corporate counsel if he is adequately to advise the client with respect to such actual or potential difficulties”. Upjohn Co. v. United States, supra, pág. 391.

 Algunos tratadistas han concluido que el Tribunal Supremo federal, al resolver Upjohn Co. v. United States, supra, descansó en Diversified Industries, Inc. v. Meredith, 572 F.2d 596, 609 (8vo Cir. 1978), una decisión del Tribunal Federal de Apelaciones para el Octavo Circuito, la cual adopta una versión modificada del Subject Matter Test. Allí se concluye que un empleado será un representante autorizado de la corporación, y por ende aplicará el privilegio abogado-cliente, siempre y cuando: (1) la comunicación del empleado se haya hecho con el propósito de asegurar consejo legal; (2) el empleado efectuó la comunicación por instrucciones de sus superiores corporativos; (3) sus superiores le pidieron que comunicara la información para ase-gurar determinado consejo legal a favor de la empresa; (4) la materia de la comuni-cación se encontraba dentro del ámbito de las funciones y responsabilidades corpo-rativas del empleado, y (5) la comunicación no ha sido diseminada más allá de aquellas personas que, por motivo de la estructura corporativa, deben conocer su contenido. Véanse: Weinstein’s Federal Evidence, supra, Sec. 503.22[4][b]; Selan Epstein y Martin, op. cit., págs. 28-29.

 Ya que la decisión del Tribunal Supremo federal en Upjohn Co. v. United States, supra, no no se yergue sobre fundamentos de naturaleza constitucional, la misma no es vinculante para los estados y territorios de la Unión Americana. McCormick on Evidence, supra. Sec. 87.1, pág. 393. No obstante, nuestra codificación de este caso en nuestra Regla 503 de Evidencia demuestra la intención manifiesta de que su contenido aplique en nuestra jurisdicción legal.

 Incluso, ya hemos establecido en el pasado que la divulgación que hace el abogado puede constituir una violación de los cánones del Código de Ética Profesio-nal y acarrear serias sanciones disciplinarias. Véase Pueblo v. Fernández Rodríguez, supra, págs. 791-796 y 807-808.

 Claro está, las comunicaciones se mantienen privilegiadas ante terceros. Pagano v. Ippoliti, 245 Conn. 640, 649-650 (1998).